UNITED STATES of America,
Appellee,

v.

Louis Glenwood LANSDOWN, Appellant.

No. 72–1066.

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1972.

Decided May 4, 1972.

Joseph L. Duvall and Douglas E. Bywater, Fairfax, Va., for appellant.

Justin W. Williams, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before WINTER, BUTZNER and FIELD, Circuit Judges.

WINTER, Circuit Judge:

In defendant's first trial for armed bank robbery and conspiracy to commit armed bank robbery, a mistrial was declared over defendant's objection. The district court took this action because it believed that the jury was hopelessly deadlocked. Defendant then moved to dismiss the indictment on the ground that jeopardy had attached at his first trial and a retrial would violate his constitutional guarantee against double jeopardy. When the district judge denied the motion and refused to stay the second trial pending an appeal of his order denying dismissal, we granted a stay of the second trial. The appeal having been briefed and argued, we conclude that a second trial would violate defendant's rights and that the order denying the motion was appealable. Accordingly, we reverse and remand the case for entry of an order dismissing the indictment.

I

The government's case against the defendant at his initial trial, which began December 7, 1971, was based on the testimony of a codefendant and another unindicted alleged coconspirator. The codefendant had pleaded guilty to the conspiracy charge and had been sentenced to a term of five years. Upon the government's motion, the count charging armed bank robbery against him was dismissed. The codefendant and the alleged coconspirator, both of whom were narcotic addicts with prior criminal records, testified that they went inside the bank to commit the robbery while the defendant waited in the alley behind the bank in the getaway car. Their testimony was that after the robbery all went to the home of the defendant's mother.

The defendant testified in his own defense, denied that he had participated in the commission of the crime, and further testified that he had never even met his codefendant. Defendant's credibility was not seriously impeached; he was shown to have pleaded guilty to only two minor bad check charges for which service of a term was not required. His mother testified that prior to the trial she had never seen the codefendant or the alleged coconspirator. Several witnesses testified as to defendant's reputation for truth and veracity. After closing arguments and the instructions of the district judge, the case was submitted to the jury at 3:55 P.M. on the day of trial.

When the jury had not completed its deliberations by 5:30 P.M., it was sent home for the day. Deliberations were resumed at 10:00 A.M. on December 8 and continued until 5:20 P.M., at which

time the foreman informed the judge that the jury was unable to agree upon a verdict. The district judge then gave the so-called Allen charge to the jury, concluding with the statement that "[a]gain I tell you that you may be as leisurely in your deliberations as the occasion may require, and you shall take all the time which you may feel is necessary." The district judge also told the jury that they could deliberate the next day if the jury so desired.

The jury then resumed its deliberations. At 6:12 P.M. the court reconvened and shortly thereafter the jury was returned. The foreman reported that a verdict had not been reached and requested that the jury be excused to return the next morning. In discussion between the district judge and counsel before the jury was returned, the defendant and his counsel had agreed to excusing the jury for the night and had declined to move for a mistrial. In the same discussion, the United States attorney who was prosecuting the case had requested that a mistrial be declared, and that the jury be discharged.

The jury resumed its deliberations at 10:00 A.M. on December 9, 1971. Shortly before 1:00 P.M., after the court had concluded another matter, the court addressed counsel as follows, with these subsequent events:

THE COURT: The jury hasn't reached a verdict in this other case, obviously.

Are you representing the government?

MR. MARCUS: Yes, I do, your Honor.

THE COURT: I am going to dismiss it—mistrial. I mean I have no choice. I am not going to let them stay.

Knock on the door. Let the jury come in. Stand them along here.

THE MARSHAL: Gentlemen, cease your deliberations and step out here, please.

(At 12:59 p. m., the jury returned to the courtroom)

THE COURT: Mr. Foreman, not having heard from you since late last night, I am assuming that you have not reached a unanimous verdict; is that correct?

THE FOREMAN: That is correct, your Honor.

THE COURT: That is all I want to know.

The jury is going to be discharged. It is obvious that you are hopelessly deadlocked.

THE FOREMAN: Your Honor, we are on the verge of a verdict.

THE COURT: Well, when you say "on the verge" I don't want to rush this jury and I don't want to browbeat anybody into anything. You have had a reasonable length of time. I am going to discharge the jury.

MR. DUVALL [counsel for defendant]: Your Honor,—

THE COURT: I don't know whether it is favorable or unfavorable. I don't want to know.

MR. DUVALL: —could the court leave the jury in for the rest of the day?

THE COURT: I could, but I am not going to. Two and a half days is an unreasonable hardship on the jurors, and it is just unreasonable, and I won't do it.

A JUROR: Could we have 10 minutes, your Honor?

THE COURT: No, because the jury is going to be discharged.

MR. DUVALL: Could they have 10 minutes, your Honor?

THE COURT: I don't know whether—I don't want to know. I don't want to argue it. I don't know whether they have a verdict one way or the other, and I am admonishing any of you, don't you tell counsel or talk to anybody about your deliberations, say anything about it. I don't know.

It is obvious, very frankly, it is very obvious that you gentlemen don't agree, because the question was—I am

discharging you and that is why I am saying it—it is a rather simple question. Honest men can disagree and I am not holding you are anything else. But you have had all of one day, half of another one and almost a third of the other, two days to decide one question, and there is only one question, and it is very simple, I mean, and so forth: This man was either a perpetrator of that bank robbery as the other two young men said or he wasn't. It is a question of fact.

I don't want you to tell me and I don't want you to talk to these counsel because this case must be tried over again. I am going to set it right after this one and another jury will hear, as far as I know, identically the same evidence. I am sorry you couldn't reach a verdict.

I am proud of our jurors, and I don't want anybody to change his opinion. But if honest men can't reach a conclusion in 20 hours on whether A was there or not I don't think 25 hours are going to help you.[1]

You are discharged, and I am sorry you couldn't do it, and I know you did your best.

Defendant contends that on the facts set forth above there was absent a "manifest necessity" to abort his trial and that as a consequence a second trial would violate his fifth amendment guarantee against double jeopardy. He argues that the relief to which he was entitled was dismissal of the indictment. Besides arguing that the mistrial was permissible and that retrial would not, therefore, constitute double jeopardy, the government counters with an attack upon our jurisdiction to hear and decide the appeal on the ground that the order appealed from was interlocutory and not a final order within the meaning of 28 U.S.C.A. § 1291. We will consider first the claim of double jeopardy.

## II

■ A defendant has a "valued right to have his trial completed by a particular tribunal." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). Because of this right, a court may not declare a mistrial without the consent of the defendant unless there is a "manifest necessity for the act, or the ends of public justice would otherwise be defeated." United States v. Perez, 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824).

Last term the Supreme Court reiterated its support for the *Perez* doctrine and noted that it stood as "a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." United States v. Jorn, 400 U.S. 470, at 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543. *Jorn* represents the latest in a line of cases which has the practical effect of narrowing the discretion of the trial judge to declare a mistrial. *See,* Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *see also,* United States v. Smith, 390 F.2d 420 (4 Cir. 1968); United States v. Chase, 372 F.2d 453 (4 Cir. 1967).

■ The general rule is that a defendant may be retried if in his first trial the jury is unable to reach an unanimous verdict. *See, generally,* Annotation: Double Jeopardy—Mistrial, 6 L.Ed.2d 1510, 1517–1518. This is so because a genuine inability to agree constitutes a "manifest necessity" to declare a mistrial and a defendant's right not to be subjected to jeopardy again must be subordinated "to the public's interest in fair trials designed to end in just judgments." Wade v. Hunter, 336 U.S. at 689, 69 S.Ct. at 837.

---

1. In fact, the jury had deliberated slightly in excess of 11 hours.

■■ An analysis of the cases supporting the general rule discloses that the decision to declare a mistrial in cases of apparent inability to agree is not based solely on the length of time the jury has deliberated. While the length of deliberations is a relevant factor, the more important consideration is whether there is a possibility that the jury can reach a verdict within a reasonable time. The most reliable source as to this information is the jury itself. The conclusion that a jury is unable to reach a verdict must be supported by something in addition to the trial court's conclusion that the jury has deliberated long enough.[2]

■ We conclude that there was no "manifest necessity" in this case for declaring a mistrial when the district court did so. The district court, without considering any other factors, simply concluded that approximately 11 hours of deliberation, in a case presenting a close question of credibility, was long enough. The district judge did not seek the opinion of counsel or the defendant; after having told the jury that it could be "leisurely in its deliberations," he made no inquiry as to whether the jury was about to reach a verdict or thought that a verdict was possible. Indeed, he rejected statements from the jury that it was on the verge of a verdict and wished to continue.[3] The jury was dismissed at approximately 1:00 P.M. The jurors would have suffered little additional hardship if required to remain at least until the end of the day.[4] Under these circumstances, we believe that the district court failed to protect adequately the defendant's right to have his case decided by a particular tribunal.

■ Our conclusion should not be construed to imply that there is a minimum period of time which a court must wait before declaring a mistrial because of a hung jury. There are many cases, which we believe have been correctly decided, where the trial court was sustained after dismissing juries where they had deliberated less than the approximately 11 hours in this case. *E. g.*, United States v. Philips, 431 F.2d 949 (3 Cir. 1970); Grogan v. United States, 394 F.2d 287 (5 Cir. 1967); Marienfeld v. United States, 214 F.2d 632 (8 Cir. 1954); United States v. Medina, 323 F.Supp. 1277 (E.D.Pa. 1971). However, in each of these cases the jury had specifically stated that they

2. The case law does not indicate how long a jury must be permitted to deliberate before a court is justified in declaring a mistrial. The length of deliberations vary widely. Compare Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892) (mistrial declared after 40 hours of deliberation), *with* United States v. Jim Lee, 123 F. 741 (N.D.Cal. 1903) (mistrial declared after 1 hour and 35 minutes of deliberation). This range suggests the impossibility of establishing a rule based solely on the length of deliberations. Of course, there may be an exceptional case where the issues are simple and the jury fails to return a verdict despite repeated assurances that it can. Under these circumstances, a trial judge may be justified in taking the case from the jury, but that is not our case and, therefore, we need not decide that issue.

3. The government contends that had the district court given the jury an additional 10 minutes as requested by one juror, it

would have committed error. This is correct. A jury cannot operate under a rigid time deadline. *See* Goff v. United States, 446 F.2d 623, 626 (10 Cir. 1971); Burroughs v. United States, 365 F.2d 431 (10 Cir. 1966). However, the importance of the juror's request for 10 more minutes, and the foreman's declaration that the jury was on the verge of a verdict, is that they indicate that the jury was not hopelessly deadlocked. Our disagreement with the district court is not over the fact that it refused to grant a specific amount of time for further deliberation, but that it declared a mistrial where the indications were that the jury was capable of reaching a verdict.

4. The jury had stated the night before that it wished to return the following day to deliberate. It expressed nothing further, before being discharged, to indicate that whether it went home at 1:00 P. M. or 5:00 P. M. was of any significance to it.

were hopelessly deadlocked, a crucial factor missing in the present case.

## III

We think that the order denying the motion to dismiss the indictment is an appealable one, and defendant's notice of appeal gave us jurisdiction over the case.

 A court of appeals has jurisdiction to hear appeals only from final orders, 28 U.S.C.A. § 1291, and certain types of interlocutory appeals (of which this case is not one), 28 U.S.C.A. § 1292; and the general rule is that an order denying a motion to dismiss an indictment is not a final order, but an unappealable interlocutory one. *See* United States v. Curry, 442 F.2d 428 (4 Cir. 1971); United States v. Garber, 413 F. 2d 284 (2 Cir. 1969); Hoffa v. Gray, 323 F.2d 178 (6 Cir.), cert. denied, 375 U.S. 907, 84 S.Ct. 199, 11 L.Ed.2d 147 (1963). The policy to limit appeals to those taken from final orders is particularly strong in criminal cases where "delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." DiBella v. United States, 369 U.S. 121, 126, 82 S.Ct. 654, 658, 7 L.Ed.2d 614 (1962); *accord* Cobbledick v. United States, 309 U.S. 323, 324–326, 60 S.Ct. 540, 84 L.Ed. 783 (1940). But despite the important interests served by the final judgment rule, there has developed a line of cases which recognizes that, under certain exceptional and narrow circumstances, an appeal can be taken even though a final judgment has not been entered.

The exception to the final judgment rule was set forth in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In *Cohen*, the Court affirmed the appealability of a district court order denying defendant's request that plaintiffs in a stockholder's derivative suit file an expense bond as required by state law. The Court stated that if the appeal were not allowed and decision of the question postponed until final judgment was entered "it will be too late effectively to review the present order and *the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably.*" (Emphasis supplied.) 337 U. S. at 546, 69 S.Ct. at 1225. The Court categorized the district court's order as follows:

> This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated . . . We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it. 337 U.S. at 546–547, 69 S.Ct. at 1225.

 In *Cohen*, the Court was interpreting the meaning of "final judgment" under 28 U.S.C.A. § 1291 which gives the court of appeals jurisdiction "from all final decisions of the district courts of the United States . . ." and thus the rule announced is equally applicable to criminal as well as civil cases.[5] For an order to be considered "final," and thus appealable under *Cohen*, it must possess three characteristics: (1) it must be separable from, and collateral to, the main cause of action; (2) the right involved must be too important to be denied review; and (3) the question presented must be such that, if review is postponed until final termination of the

---

5. *See* Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (denial of habeas corpus to fix bail); Higgins v. United States, 205 F.2d 650 (9 Cir. 1953) (order determining that an accused is incapable of standing trial as a result of present insanity). Bail orders are now reviewable under 18 U.S.C.A. § 3147, but the reasoning in *Stack* would appear to be still valid.

case, the claimed right will be irreparably lost.[6]

■ We believe that the district court's denial of the defendant's motion to dismiss based on a claim of double jeopardy is a final and appealable order under *Cohen*. First, defendant's right is under the fifth amendment and it is separable from, and collateral to, the main cause of action which is whether he is innocent or guilty of the crimes charged. Second, the right claimed is a constitutional one and, as such, it is too important to be denied review. Finally, if review is not had now, the right claimed—to be free from being twice forced to stand trial for the same offense—will be irreparably lost.

■ The government argues that review of defendant's claim may be had at the end of the second trial and, if this court concludes that jeopardy did attach to the first trial, it can reverse defendant's conviction; and if the defendant is acquitted in the second trial, the issue is moot. This argument is based upon a lack of appreciation of the true nature of the objectives of the guarantee against double jeopardy. The double jeopardy "prohibition is not against being twice punished, but against being twice put in

jeopardy." United States v. Ball, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L. Ed. 300 (1896). Indeed, the Supreme Court has stated that the "underlying idea" of the double jeopardy clause is that the "State with all of its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); *accord* United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Even if an appellate court reverses the conviction in a second trial on the grounds of double jeopardy, a defendant has still not been afforded the full protection of the fifth amendment since he has been subjected to the embarrassment, expense, anxiety and insecurity involved in the second trial.[7] If an individual is to be provided the full protection of the double jeopardy clause, a final determination of whether jeopardy has attached to the previous trial must, where possible, be determined prior to any retrial.[8]

6. *See* 9 Moore's Federal Practice ¶ 110.10 (2nd Ed. 1970).

7. The government relies on Parr v. United States, 351 U.S. 513, 76 S.Ct. 912, 100 L.Ed. 1377 (1956). In *Parr*, the Court held that a defendant must wait until the termination of his trial under a second indictment before he could have review of a dismissal of his original indictment. We believe that Parr is distinguishable. First, in *Parr* there was no claim that jeopardy had attached as a result of the first indictment and hence the defendant's claim did not involve a constitutional right as in this case. Second, the Court found that the defendant would not be denied effective review of his claim. *But see* Parr v. United States, supra, 351 U.S. at 521, 76 S.Ct. 912 (Warren, C. J., dissenting). Here, if defendant is denied review at this stage, the right claimed will be irreparably lost. Finally, the Court noted that bearing the cost and discomfiture of a criminal trial is one of the painful obligations of citizenship. In

*Parr*, the defendant sought review before he had undergone the burden of a single trial. In the present case the government would have the defendant bear this burden twice before review. We think this is an unreasonable burden, particularly when this court concludes that the retrial is barred.

8. Our holding is limited to the narrow facts and circumstances of this case. Where the charges in the first and second trial differ and a double jeopardy argument rests on a claim that certain facts required for a conviction in the second trial were previously determined in an earlier trial, review must wait until the completion of the second trial. Nor does our decision apply to those cases where the mistrial is declared at the request of the defendant since in those cases the defendant has waived any claim of double jeopardy. *See* United States v. Tateo, 377 U.S. 463, 467, 84 S.Ct. 1587, 12 L.Ed. 2d 448 (1964).

The government also contends that "[t]o hold . . . [a] denial of defendant's motion to dismiss . . . appealable merely because of a claim of double jeopardy . . . presents the alarming specter of any defendant being able to delay his retrial by saying the magic phrase of 'double jeopardy.' "[9] We do not believe, however, that an individual who requests the full protection of a constitutional right presents an alarming specter to our criminal justice system. This type of argument—that our criminal justice system would be impaired if defendants were permitted the full protection of their constitutional rights—has been raised before and rejected. *See* United States v. Wade, 388 U.S. 218, 237–238, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967); Miranda v. Arizona, 384 U.S. 436, 479–481, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Escobedo v. Illinois, 378 U.S. 478, 488–489, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Mapp v. Ohio, 367 U.S. 643, 659–660, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). "[T]he Constitution has prescribed the rights of the individual when confronted with the power of government . . . If the individual desires to exercise his privilege, he has the right to do so." Miranda v. Arizona, supra, 384 U.S. at 478–480, 86 S.Ct. at 1630.

Any delay in the administration of criminal justice and any increase in the number of appeals stemming from our decision will be minimal. Our decision will apply only to that very small number of criminal cases in which a mistrial is declared against the wishes of the defendant.[10] Furthermore, if the defendant is successful in his appeal, both he and the government will be saved the time and expense of a second trial. There is no greater waste for all concerned—defendant, government, court, and jury—than the reversal of a convic-

tion on the grounds that it was barred in the first place by the double jeopardy clause. Finally, it should be noted that the double jeopardy clause is also concerned with "finality." "[T]he Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings." United States v. Jorn, supra, 400 U.S. at 479, 91 S.Ct. at 554.

We conclude, therefore, that the denial of defendant's motion to dismiss was a final appealable order under *Cohen*. We have jurisdiction to decide and, therefore, direct that defendant's motion to dismiss his indictment be granted.

Reversed and remanded.

---

9. Brief for Appellee, at 6.

10. *See* note 7 supra. While there are no statistics on the number of mistrials in criminal cases, we are satisfied that the number is quite small in relation to the

total number of criminal cases. And our decision today involves only a small percentage of those since we deal only with mistrials instigated by the court and opposed by the defendant.