**Elwood CAMPBELL, Petitioner,**

v.

**Charles BRUNNELLE, Respondent.**

**No. 95 Civ. 0078 (PKL).**

United States District Court,
S.D. New York.

April 18, 1996.

Elwood Campbell, Attica, NY, pro se.

Douglas R. Israel, Asst. Attorney General of the State of New York, New York City, for defendant.

### ORDER

LEISURE, District Judge:

This action was referred to the Honorable Andrew J. Peck, United States Magistrate Judge, for preparation of a report and recommendation on petitioner's habeas corpus petition. On December 4, 1995, Judge Peck issued a Report and Recommendation (the "Report") recommending that this Court deny the petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure, the parties have ten (10) days to file written objections to a report and recommendation after being served with a copy. However, by *ex parte* application, petitioner has twice requested extensions of time in which to file objections. By Orders dated December 19, 1995, and January 22, 1995, petitioner's time to object to the Report was extended to and including February 15, 1996. Nevertheless, no objections to the Report have been filed. Moreover, the Court has reviewed the Report and finds that it is legally correct and proper. The Court therefore adopts the Report in its entirety.

### CONCLUSION

For the reasons stated in the Report, the petition is HEREBY DENIED.

**SO ORDERED.**

### *REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge.

Petitioner Elwood Campbell's first trial for robbery lasted two days and ended when the state trial judge declared a mistrial when the jury declared themselves deadlocked after three hours of deliberations. The trial judge relied on the controlling New York case on jury deadlock, *Matter of Plummer v. Rothwax*, 63 N.Y.2d 243, 481 N.Y.S.2d 657, 471 N.E.2d 429 (1984), and the United States Supreme Court's test of "manifest necessity" to support his decision to discharge the jury. Petitioner Campbell's present petition for a writ of habeas corpus claims that the trial judge did not meet the test of manifest necessity, and therefore that his subsequent robbery conviction placed him in double jeopardy in violation of the Fifth Amendment.

For the reasons set forth below, I recommend that the Court deny Campbell's petition.

### FACTS

#### The Evidence at Campbell's First Trial

Petitioner Elwood Campbell was arrested for the robbery of William Valentine after being identified in a police lineup. The main

issue at Campbell's first trial was whether Valentine correctly identified Campbell as the robber.

On July 2, 1990, Valentine walked to the end of a pier to watch the sunset. (Respondent's Appendix ["App."] at 48.) Two men approached him, one African–American and one Hispanic. (App. at 51–52.) The first man was African–American of generous build, approximately thirty years old, wearing a dark shirt and dark shorts; the second man was Hispanic with dark wiry hair, approximately twenty-three years old, dressed in a loose tank top shirt and white shorts. (App. at 52, 74–75.) The African–American pushed Valentine to the ground, ripped Valentine's pants pocket and took his wallet. (App. at 52–54.) The two assailants then ran quickly from the pier towards the parking lot. (App. at 56.) Valentine estimated that the whole incident lasted "maybe twelve to fifteen" seconds, and that during half of that time, he was looking at the African–American's face. (App. at 57.)

During closing arguments, defense counsel attempted to discredit Valentine's identification testimony. Counsel depicted the incident as "a short period of time, [when] an extremely unusual stressful, horrifying incident took place" (App. at 159), and argued that as a result, Valentine's ability to make an accurate identification was weak at best. (App. at 168–69.)

After the attack, four witnesses assisted Valentine, and told him that they had seen the African–American on the pier previously. (App. at 63–64.) They then accompanied Valentine to the police precinct to report the robbery and describe the assailants. (App. at 64.)

Two weeks later, one of the four witnesses, David Naill, called the police to tell them that he had spotted the African–American man who attacked Valentine; Naill described the suspect and where the police could find him on the pier. (App. at 89–94, 111–14.) The police arrested Campbell and called Valentine in to view a lineup. (App. at 65, 115.)

When Valentine arrived, he was brought to a room where Naill also was present. (App. at 66.) Naill described the red tee-shirt that Campbell was wearing, but the police officer conducting the lineup provided Campbell with a different, black shirt to wear. (App. at 132.) Valentine picked Campbell out of the lineup within thirty to forty seconds. (App. at 69, 70, 151.)[1] Valentine admitted, however, that at trial, eight months after the robbery, he could not be certain that Campbell was his assailant. (App. at 69: "The man sitting at the defense table looks familiar to me, but it's been eight months. And I don't feel that I can positively say that it's him.")

Hugo Fasano, a private investigator, was presented by the defense to rebut Naill's testimony that he was 100 feet from the robbery. (App. at 85, 155.) The defense had Fasano measure distances based on marks Valentine and Naill had made on photographs of the pier showing their whereabouts during the robbery. (App. 60–61, 83–84.) Fasano calculated Naill's distance from the robbery to be two hundred twenty-five feet, while Naill had testified it was one hundred feet. (App. at 155, 85.) On cross-examination, however, Fasano admitted that he was not present on the night of the robbery, that he was not certain as to Naill's exact position, and therefore that his "measurements of the pier are abstract measurements of the dimensions of the pier." (App. at 157.) The defense also argued that Naill implicated Campbell in the robbery because Naill disliked him as a result of a "screaming match" they had had before the robbery. (App. at 87, 169–76.)

### Jury Deliberations and the Court's Declaration of a Mistrial

After two days of testimony (from Valentine, Naill, three police officers, and the defendant's private investigator), the jurors deliberated for three hours. On the jury's first return to the courtroom, they asked to hear excerpts from Valentine's and Naill's testimony and that of the police officer who took

---

1. In closing argument, defense counsel argued that the men chosen for Campbell's lineup were considerably younger than Campbell, attempting to raise doubt about the fairness of the lineup.

(App. at 168.) Photographs taken by the officer conducting the lineup, showing the composition and positioning of the men in the lineup, were presented as evidence at trial. (App. at 149–50.)

the witnesses' description of the assailants on the night of the robbery. (App. at 180–81.)

The jury next asked whether they could consider the possibility that the conversation between Valentine and Naill prior to the lineup at the police station may have affected Valentine's choice in the lineup, and whether they could consider the possibility that Naill "might have influenced Mr. Valentine's opinion of who his assailant was." (App. at 182.) The judge instructed the jury to decide solely on the evidence presented, adding that if there was evidence of such a conversation or influence, they may "avail" themselves of that testimony, but that speculation was not permitted. (App. at 182–84.)

On their final return, the jury reported that they were deadlocked:

THE COURT: Has the jury agreed upon a verdict? Obviously, you have not. But, that's a required question. Your answer is, no.

I have *your note.* It *reads,* "Judge Leff, *we're presently deadlocked after three votes. The latter two of which have maintained the same counts of four against.*"

What happens in this situation? Well, there is a specific section of the law that says what that situation is, which you have just described.

(App. at 186, emphasis added.) The judge then quoted N.Y. Criminal Procedure Law § 310.60 to the jury:

"A deliberating jury may be discharged by the Court without having to render a verdict only when the jury has deliberated for an extensive period of time without agreeing upon a verdict with respect to any of the charges submitted and the Court is satisfied that any such agreement is unlikely within a reasonable time."

(App. at 186.) The judge then read to the jury an excerpt from *Plummer v. Rothwax,* 63 N.Y.2d 243, 481 N.Y.S.2d 657, 471 N.E.2d 429 (1984):

[COURT:] I would like to allude to what your note says and read to you from a Court decision in this state in the Court of Appeals, the state's highest court in a similar situation. Obviously, it's a differ-

ent case. But, I'll read what happened in that case.

At 5:40PM the jury sent a note to the trial judge, saying, "Your Honor, we cannot come to a verdict." The jurors were assembled in the courtroom and the judge read from Section 310.60 and explained what the statute implies where further deliberations would be fruitless, where there would be no possibility of further deliberations altering the position of the jury. Addressing the foreperson in the presence of the other jurors, he then engaged in the following dialogue.

THE COURT [from *Plummer v. Rothwax:* ] "Now, is, Madam Foreperson, is that the position of the jury at this time? Do you think if you were to discuss this case for an additional period of time the jury is likely to come to any changed position?"

THE FOREPERSON: "No, sir."

THE COURT: "You are suggesting to me that this jury is what you might say, hopelessly deadlocked, split down the middle, and there is no chance of the jury changing its position? Essentially, the problem is that this case was tried, it's true in only a period of a day. But, the circumstances provided that when a jury is discharged the defendant is to be retried on the indictment and so we'll select another jury with no more care than we selected this one. They'll hear the same witnesses and they'll have to hear the same case. So, if you think you would like to go to dinner and continue your deliberations ... When you think that would produce anything, we'll do that. If you want to indicate that this jury is so deadlocked that it's not going to help you, you can tell me that, now."

THE FOREPERSON: "I believe that we're deadlocked. I do believe that we're deadlocked."

THE COURT: "And you're suggesting that the decision of twelve jurors is so hopelessly deadlocked that no amount of further deliberations would be of any value and it would be a waste of your time and the Court's, is that what you're suggesting?"

THE COURT [now directly from *People v. Campbell*]: And the foreperson answered, "Yes."

Now, I have your note. The note says, "We're presently deadlocked after three votes and the latter two of which have maintained the same count for and against. What happens in this situation?"

Mr. Foreman, is it your position that if I sent you to dinner you would relax for an hour and while you were having dinner and then came back it would make any difference?

FOREPERSON: No, I don't.

THE COURT: *You don't think that further deliberations would be of any value?*

FOREPERSON: *No.*

(App. at 187–89, emphasis added, *quoting Plummer v. Rothwax*, 63 N.Y.2d at 249, 481 N.Y.S.2d at 660–61, 471 N.E.2d at 432–33.)

The trial judge then asked each juror whether the jury agreed that further deliberations would be a waste of time. (App. at 189–90.) When the jurors unanimously agreed, the judge excused the jurors. (App. at 190.)

After the jury's discharge, defense counsel objected to the declaration of a mistrial, stating that "although the jurors at this point believe that they are unable to reach a verdict, they have only been deliberating, approximately after all of the readback, for about three hours. I believe that if they would have had dinner and come back they may have been able to reach a conclusion." (App. at 191–92.) The trial judge noted that he had followed *Matter of Plummer v. Rothwax* "to the letter." (App. at 192.) The trial judge noted defense counsel's objection, but set the case down for a new trial date. (App. at 193.)

### Further State Court Proceedings

On May 14, 1991, Campbell was retried and convicted of second-degree robbery. On June 12, 1991, Campbell was sentenced to 6½–13 years imprisonment.

Campbell appealed his conviction to the Appellate Division, First Department, arguing that the first trial judge abused his discretion in declaring a mistrial, and therefore that his subsequent trial placed him in double jeopardy in violation of his rights under the Fifth Amendment of the Constitution. The First Department affirmed his conviction on April 19, 1994. *People v. Campbell*, 203 A.D.2d 127, 610 N.Y.S.2d 246 (1st Dep't 1994). The decision stated, in full:

> While the jury first deliberated for only three hours before the trial court at defendant's first trial declared a mistrial, there is no minimum time a jury must deliberate before a mistrial is considered. (*People v. Baptiste*, 72 N.Y.2d 356, 361, 533 N.Y.S.2d 853, 530 N.E.2d 377). Following the procedure set forth in *Matter of Plummer v. Rothwax*, 63 N.Y.2d 243, 252, 481 N.Y.S.2d 657, 471 N.E.2d 429, the trial court inquired of each juror whether further deliberations would be fruitless. Since the sole issue was identification, and since each juror unequivocally stated that the jury was hopelessly deadlocked, it cannot be said that declaring a mistrial was an abuse of discretion (CPL 310.60).
>
> In addition no objection was made until after the Court declared the mistrial.

Leave to appeal was denied by the New York Court of Appeals on August 8, 1994. *People v. Campbell*, 84 N.Y.2d 823, 617 N.Y.S.2d 143, 641 N.E.2d 164 (1994).

## ANALYSIS

### I. THE "MANIFEST NECESSITY" STANDARD

■ "The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in ... criminal proceedings." *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). "[A]s a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978).

■ "The fountainhead decision construing the Double Jeopardy Clause in the context of a declaration of a mistrial over a defendant's objection is *United States v. Perez*, [22 U.S.] 9 Wheat. 579 [6 L.Ed. 165] (1824). Mr. Justice Story, writing for a

unanimous Court, set forth the standards for determining whether a retrial, following a declaration of a mistrial over a defendant's objection, constitutes double jeopardy within the meaning of the Fifth Amendment." *Illinois v. Somerville,* 410 U.S. 458, 461, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973). Justice Story's *Perez* decision established the requirement that there be "a manifest necessity" for declaring a mistrial, "or the ends of public justice would otherwise be defeated." *United States v. Perez,* 22 U.S. at 580. The "manifest necessity" standard has been "consistently adhered to by [the Supreme Court] in subsequent decisions." *Illinois v. Somerville,* 410 U.S. at 461–62, 93 S.Ct. at 1069.[2]

■ The "manifest necessity" standard "abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial. The broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decisions of [the Supreme] Court." *Illinois v. Somerville,* 410 U.S. at 462, 93 S.Ct. at 1069.[3] Appellate deference to the trial judge's determination is equally applicable on federal habeas corpus review of a state judge's mistrial determination. *Arizona v. Washington,* 434 U.S. at 513 n. 33, 98 S.Ct. at 834 n. 33. However, while the "trial judge's decision to declare a mistrial . . . is entitled to great deference," in order to protect the criminal defendant's interests "reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story,

the trial judge exercised 'sound discretion' in declaring a mistrial." *Id.* at 514, 98 S.Ct. at 834–35.

In *Arizona v. Washington,* the Supreme Court recognized that there is a "spectrum" of trial problems which can trigger the "manifest necessity" analysis. *Id.* at 506–11, 98 S.Ct. at 831–33. At one extreme of the spectrum, a trial which is terminated at the behest of the prosecutor or as a result of prosecutorial conduct will be viewed with the "strictest scrutiny." *Id.* at 507–08, 98 S.Ct. at 831–32. "At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial." *Id.* at 509, 98 S.Ct. at 832.[4] "Moreover, in this situation there are especially compelling reasons for allowing the trial judge to exercise broad discretion in deciding whether or not 'manifest necessity' justifies a discharge of the jury. . . . The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore afforded great deference by a reviewing court." *Id.* at 509–10, 98 S.Ct. at 832; *accord, e.g., United States v. Klein,* 582 F.2d at 191.

■ "Courts have isolated a number of significant factors which are useful in determining whether a judge has properly exercised his discretion to declare a deadlocked jury. These include: (1) a timely objection by defendant,[5] (2) the jury's collective opinion that it cannot agree,[6] (3) the length of the

---

**2.** *See also, e.g., Foster v. Gilliam,* —— U.S. ——, ——, 116 S.Ct. 1, 2, 132 L.Ed.2d 883 (1995) (Rehnquist, C.J.); *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830; *United States v. Jorn,* 400 U.S. at 481–86, 91 S.Ct. at 555–58; *Wade v. Hunter,* 336 U.S. 684, 689–90, 69 S.Ct. 834, 837–38, 93 L.Ed. 974 (1949); *United States v. Millan,* 17 F.3d 14, 18–19 (2d Cir.1994).

**3.** *Accord, e.g., Arizona v. Washington,* 434 U.S. at 509–10, 98 S.Ct. at 832; *White v. Keane,* 969 F.2d 1381, 1382–83 (2d Cir.1992); *United States v. Grasso,* 600 F.2d 342, 343 & n. 5 (2d Cir. 1979); *see also, e.g., Matter of Plummer v. Rothwax,* 63 N.Y.2d at 250, 481 N.Y.S.2d at 662, 471 N.E.2d at 434.

**4.** *See also, e.g., Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963); *United States v. Klein,* 582 F.2d 186,

194 (2d Cir.1978) (*quoting United States v. Castellanos,* 478 F.2d 749, 751 (2d Cir.1973)), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *Matter of Plummer v. Rothwax,* 63 N.Y.2d at 250, 481 N.Y.S.2d at 662, 471 N.E.2d at 434.

**5.** *E.g., United States v. Gordy,* 526 F.2d 631, 635 & n. 1 (5th Cir.1976); *United States v. Beckerman,* 516 F.2d 905, 909 & n. 10 (2d Cir.1975); *United States v. Goldstein,* 479 F.2d 1061, 1066–68 (2d Cir.), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973).

**6.** *E.g., White v. Keane,* 969 F.2d at 1383; *United States v. Goldstein,* 479 F.2d at 1068–69; *United States v. Lansdown,* 460 F.2d 164, 169 (4th Cir. 1972) (error for judge to declare mistrial where jurors said they were on the verge of a verdict); *United States v. Brahm,* 459 F.2d 546, 550 (2d

deliberations of the jury,[7] (4) the length of the trial,[8] (5) the complexity of the issues presented to the jury,[9] (6) any proper communications which the judge has had with the jury,[10] and (7) the effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict." *Arnold v. McCarthy*, 566 F.2d 1377, 1386–87 (9th Cir.1978); *see also, e.g., United States v. Feijoo–Tomala*, 747 F.Supp. 181, 185 (E.D.N.Y.1990) (*citing Arnold v. McCarthy*); *Matter of Plummer v. Rothwax*, 63 N.Y.2d at 251–52, 481 N.Y.S.2d at 662–63, 471 N.E.2d at 434–35.

## II. APPLICATION OF THE "MANIFEST NECESSITY" STANDARD

### A. Defendant's Counsel Did Not Object Until After the Jury Was Discharged

■ In *Arizona v. Washington*, the Supreme Court stated that the "prosecutor must demonstrate 'manifest necessity' for any mistrial declared *over the objection of the defendant*." 434 U.S. at 505, 98 S.Ct. at 830 (emphasis added). On the other hand, when the defendant moves for or consents to the granting of a mistrial, there is no double jeopardy issue. *Oregon v. Kennedy*, 456 U.S. 667, 672–73, 102 S.Ct. 2083, 2088, 72 L.Ed.2d 416 (1982); N.Y. CPL § 310.60(1)(b).

Defendant's consent to declaration of a mistrial can be implicit as well as explicit. *See, e.g., United States v. Beckerman*, 516 F.2d at 909 (" 'Consent need not be express, but may be implied from the totality of circumstances attendant on a declaration of mistrial.' ") (*quoting United States v. Goldstein*, 479 F.2d at 1067).

When the trial judge here received the jurors' note that they were deadlocked (App. at 186), defense counsel stood silent until *after* the judge had declared a mistrial and discharged the jury. (App. at 185–92.)

The Second Circuit has held that it "need not go so far as to hold that in the absence of an express objection to discharging the jury, consent is, in effect, to be presumed," but "instead that the failure to object is" a factor to be considered. *United States v. Goldstein*, 479 F.2d at 1067 n. 11; *see also, e.g., United States v. Goldman*, 439 F.Supp. 358, 362 (S.D.N.Y.), *aff'd mem.*, 573 F.2d 1297 (2d Cir.1977). *Compare United States v. Puleo*, 817 F.2d 702, 705 & n. 4 (11th Cir.1987) (goes beyond *Goldstein* to hold that "where the trial judge expressed a clear intent to declare a mistrial and the defense counsel had an opportunity to object but did not, we hold that [defendant] has consented to the mistrial."); *Camden v. Circuit Court of Second Judicial Circuit*, 892 F.2d 610, 615 (7th Cir. 1989) (same), *cert. denied*, 495 U.S. 921, 110 S.Ct. 1954, 109 L.Ed.2d 316 (1990).

Cir.), *cert. denied*, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972); *People v. Baptiste*, 72 N.Y.2d 356, 361–62, 533 N.Y.S.2d 853, 856–57, 530 N.E.2d 377, 380–81 (1988); *Matter of Plummer v. Rothwax*, 63 N.Y.2d at 252, 481 N.Y.S.2d at 663, 471 N.E.2d at 435; *People v. Presley*, 22 A.D.2d 151, 154, 254 N.Y.S.2d 400, 404 (4th Dep't 1964) (proper for deliberations to continue where "the jury never asked to be discharged, never said they were tired and needed rest, never stated that an agreement would be impossible even after further deliberation or even that they were not likely to agree...."), *aff'd*, 16 N.Y.2d 738, 262 N.Y.S.2d 113, 209 N.E.2d 729 (1965).

7. *E.g., White v. Keane*, 969 F.2d at 1382–83 (deadlock after 27 hours of deliberation on a relatively simple case); *Arnold v. McCarthy*, 566 F.2d at 1386–87 (deadlock after 12 hours); *United States v. Gordy*, 526 F.2d at 636 (5½ hours of deliberations did not result in true deadlock); *United States v. Beckerman*, 516 F.2d at 909–10 (deadlock after 7 hours of deliberation); *United States v. Lansdown*, 460 F.2d at 169; *Matter of*

*Plummer v. Rothwax*, 63 N.Y.2d at 251–52, 481 N.Y.S.2d at 663, 471 N.E.2d at 435 (4½ hour deliberations after 1 day trial) (and cases cited therein).

8. *E.g., United States v. Beckerman*, 516 F.2d at 910 (jury deadlocked after 3 days of trial and 7 hours of deliberations); *United States v. Gordy*, 526 F.2d at 635; *Matter of Plummer v. Rothwax*, 63 N.Y.2d at 252, 481 N.Y.S.2d at 662–63, 471 N.E.2d at 434–35 (trial very short).

9. *E.g., United States v. Gordy*, 526 F.2d at 635–36; *Matter of Plummer v. Rothwax*, 63 N.Y.2d at 252, 481 N.Y.S.2d at 663, 471 N.E.2d at 435.

10. *E.g., United States v. Klein*, 582 F.2d at 192–94; *Arnold v. McCarthy*, 566 F.2d at 1387; *United States v. Gordy*, 526 F.2d at 636–37 (jury felt rushed by knowledge that judge planned to depart to hold court in another city as soon as they finished deliberating); *Matter of Plummer v. Rothwax*, 63 N.Y.2d at 252, 481 N.Y.S.2d at 663, 471 N.E.2d at 435.

Here, the trial judge could have assumed that Campbell did not object to the declaration of a mistrial because of Campbell's counsel's silence while the judge questioned the jurors about being deadlocked and declared a mistrial. By the time Campbell's counsel objected, the jury already had been discharged—and while the transcript is not completely clear, presumably the jurors already had left the courtroom. (*See* App. at 190–91.) Thus, by the time Campbell's counsel objected, it was too late for the Court to do anything about it. *See, e.g., Camden v. Circuit Court of Second Judicial Circuit,* 892 F.2d at 616–17 & n. 7; *United States v. Puleo,* 817 F.2d at 705 & n. 4; *United States v. Phillips,* 431 F.2d 949, 949–51 (3d Cir. 1970); *see also, e.g., People v. Satloff,* 56 N.Y.2d 745, 746, 452 N.Y.S.2d 12, 13, 437 N.E.2d 271, 272 (1982) (objection to alleged inconsistent verdicts made after jury discharge is too late since "[a]t [that] point, it was no longer possible to remedy the defect, if any.... Such a protest must be registered prior to the discharge of the jury properly to preserve the issue for review."); *People v. Stahl,* 53 N.Y.2d 1048, 1050, 442 N.Y.S.2d 488, 489, 425 N.E.2d 876, 877 (1981) (same); *People v. King,* 105 A.D.2d 1015, 1016–17, 482 N.Y.S.2d 924, 925–26 (3d Dep't 1984) (same); *People v. Holmes,* 104 A.D.2d 1049, 1050, 480 N.Y.S.2d 956, 957 (2d Dep't 1984) (same).

Campbell's failure to object until after the jury's discharge thus is a factor favoring the declaration of the mistrial.[11]

■ Even if counsel's objection after the jury's discharge is considered, however, it is clear that "[w]here, for reasons deemed compelling by the trial judge, ... the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961); *see also, e.g., United States v. Beckerman,* 516 F.2d at 908 ("That the court's declaration of a mistrial was made without the appellant's ... consent, does not impair the validity of the ruling."); *United States v. Klein,* 582 F.2d at 196–97 (if "[t]he only declaration of mistrial that would not run afoul of the proscription against double jeopardy would be the one to which the defendant voiced no objection[,] [d]iscretion would then lie exclusively in the hands of the defen-

11. The State contends that because Campbell's counsel did not timely object to the declaration of a mistrial, the issue was not preserved for appeal under New York law; the Appellate Division's affirmance was based on procedural default; and thus this Court is barred from reviewing the merits of Campbell's petition. (*See* State Brief at 4–6.)

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (citations omitted). Because petitioner Campbell raises neither the claim of "cause and prejudice" nor a "fundamental miscarriage of justice," these alternatives need not be addressed.

A state court can reach the merits of a federal claim in an alternative holding without losing the protection afforded by the "adequate and independent state ground" doctrine. *Id.* at 264 n. 10, 109 S.Ct. at 1044 n. 10.

*Harris,* as clarified by the Supreme Court in *Coleman v. Thompson,* provides that a federal habeas court "will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991).

The Appellate Division decided Campbell's appeal on the merits of his double jeopardy claim, then cryptically added a one sentence paragraph that "[i]n addition no objection was made until after the Court declared the mistrial." *People v. Campbell,* 203 A.D.2d at 127, 610 N.Y.S.2d at 247 (quoted at page 9 above). The Appellate Division decision rests primarily on federal law. Because the additional sentence noting the lack of an objection can be read as addressing one of the factors to be considered in reviewing the declaration of a mistrial, it is not at all clear from the face of the opinion that the Appellate Division's decision rests on an adequate and independent state procedural ground. Accordingly, the Court is not barred from reviewing the merits of Campbell's habeas petition.

dant."). I turn, then, to examination of other relevant factors.

## B. *The Jury Unanimously Stated That It Was Deadlocked*

The jury's decision that it is deadlocked is a "crucial factor." *United States v. Lansdown*, 460 F.2d at 169–70; *see also, e.g., United States v. Klein*, 582 F.2d at 192 (the Second Circuit "recently reiterated that, where the record reveals a deadlocked jury, the discretion of the trial court to declare a mistrial will be upheld.").

Here, as in *Matter of Plummer v. Rothwax*, "[i]t is significant that the jury *on its own initiative* declared that it was hopelessly deadlocked. Presumably the jury reached a consensus before reporting to the Judge through the note presented by the foreperson. . . . Thereafter, the Judge questioned the jury . . . who insisted that further deliberations would be fruitless and that returning after dinner . . . would not be helpful." 63 N.Y.2d at 252, 481 N.Y.S.2d at 663, 471 N.E.2d at 435 (emphasis added); *see also* cases cited in note 6, above. (*See* App. at 186–89.) And as the New York Court of Appeals suggested in *Matter of Plummer v. Rothwax*, the trial judge here not only questioned the foreperson but each of the jurors, who unanimously declared that they were deadlocked and that further deliberations would not be of value. (App. at 189–90.) [12]

The Second Circuit also has pointed out that the jurors need not be unanimous in the view that they are deadlocked, so long as some jurors say they are deadlocked and will not change their mind:

> The best answer to appellant's argument for unanimity of disagreement is Judge Metzner's common sense response to defense counsel that

A deadlock is two versions of approach. Some have one, others have the other. . . . [Y]ou don't need an agreement to disagree. You just need some jurors to say, "I will not change my mind." That is a deadlock.

*United States v. Klein*, 582 F.2d at 193. Here, the jurors unanimously agreed that they were deadlocked. (App. at 189–90.)

The present case is readily distinguishable from cases where the trial judge declared a mistrial although the jurors indicated that further deliberations might be helpful. *Compare, e.g., United States v. Lansdown*, 460 F.2d at 167, 169–70 (error for judge to *sua sponte* declare jurors deadlocked despite jurors statements that they were on the verge of a verdict and only needed ten more minutes).

The jurors' unanimous declaration of deadlock is the most important factor supporting the trial judge's declaration of a mistrial in this case.

## C. *The Length of the Jury's Deliberations in Relation to the Length of the Trial and the Complexity of the Issues Before the Jury*

■ Petitioner Campbell contends that the jury's three hours of deliberation does not satisfy N.Y.Criminal Procedure Law § 310.60, which permits the jury to be discharged "only when" it "has deliberated for an *extensive period of time* without agreeing on a verdict . . . and the court is satisfied that any such agreement is unlikely within a reasonable time." (Emphasis added.)

■ Neither the New York courts interpreting § 310.60, nor the federal courts in deciding constitutional requirements, have ever established a per se rule that jurors must deliberate for any set period of time. *See, e.g., Arnold v. McCarthy*, 566 F.2d at

---

**12.** *See Matter of Plummer v. Rothwax*, 63 N.Y.2d at 252, 481 N.Y.S.2d at 663, 471 N.E.2d at 435; *see also, e.g., United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034, 1043–44 & nn. 55–57 (3d Cir.1975) (criticizes trial judge for directing inquiry only to foreperson and not entire jury, but notes that "If the jury had, on its own initiative, declared itself deadlocked, there might have been less necessity for the judge to have inquired into the opinions of the other jurors since, in such situation, the jury would presumably have reached a consensus before reporting its deadlock to the judge."); *United States v. Klein*, 582 F.2d at 193 (Second Circuit has "held that a trial court acted within its sound discretion in declaring a mistrial even though the trial judge questioned only the jury foreman about deadlock and did not poll the entire jury.").

1387; *Matter of Plummer v. Rothwax,* 63 N.Y.2d at 251–52, 481 N.Y.S.2d at 663, 471 N.E.2d at 435 (citing federal cases). Rather, the appropriate length of deliberations is dependent in part on the length of the trial, the complexity of the issues involved, and the jurors' belief that they are deadlocked. As the New York Court of Appeals stated in *Matter of Plummer v. Rothwax:*

> The trial was rather short and the issue to be resolved entirely simple.... Neither the law nor the facts were complicated or confusing, requiring any great length of time for the jury to analyze legal intricacies or sort out factual questions....
>
> In light of the foregoing, it cannot be said that the jury's deliberations, which lasted approximately 4½ hours excluding lunch, was per se insufficient as a matter of law. Indeed, jury deliberations lasting a similar period of time have repeatedly been held by Federal appellate courts throughout the country to be adequate under circumstances analogous to those here. [Citations omitted.] While a very short period of deliberation in a lengthy and complicated case may be an inadequate predicate on which to find an irreconcilable disagreement among the jurors, *where, as here, the length of the trial was short and the issue clear, the trial court may well be justified in accepting a deadlock after only a few hours of deliberation.*

63 N.Y.2d at 251–52, 481 N.Y.S.2d at 663, 471 N.E.2d at 435 (emphasis added). Similarly, federal decisions establish that "[t]here is no minimum amount of time which a jury must spend in deliberations before a mistrial can be declared. This factor is one which is best left to the determination of the trial judge who was most aware of the circumstances of the trial." *Arnold v. McCarthy,* 566 F.2d at 1387; *accord, United States v. Feijoo–Tomala,* 747 F.Supp. at 185 (quoting *Arnold* ).[13]

Indeed, the cases have upheld the trial court's declaration of a mistrial after as little as three or four hours deliberation where, as here, the case was short, the issues simple, and the jury declared itself deadlocked. *See, e.g., Shaw v. Norris,* 33 F.3d 958, 962 (8th Cir.1994) (upholding mistrial declared after "approximately three and a half hours"); *Lindsey v. Smith,* 820 F.2d 1137, 1155 (11th Cir.1987) (upholding mistrial declared after three hours of jury deliberations), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1327, 103 L.Ed.2d 595 (1989); *Fay v. McCotter,* 765 F.2d 475, 477 (5th Cir.1985) (upholding mistrial declared when jury considered themselves deadlocked after three hours); *United States v. Lorenzo,* 570 F.2d 294, 299 (9th Cir.1978) (upholding mistrial declared after jury deliberations of "a little over three hours"); *United States v. Cording,* 290 F.2d 392, 393 (2d Cir.1961) (upholding declaration of mistrial after less than four hours of deliberation); *United States v. Lee,* 123 F. 741, 743 (N.D.Cal.1903) (declaration of mistrial found proper after approximately two and a half hours of jury deliberations); *People v. Sparacino,* 150 A.D.2d 814, 542 N.Y.S.2d 235, 236 (2d Dep't) (upholding mistrial declared when jury declared itself deadlocked after "several hours"), *app. denied,* 74 N.Y.2d 747, 545 N.Y.S.2d 122, 543 N.E.2d 765 (1989); *see also, e.g., Arnold v. McCarthy,* 566 F.2d at 1387 n. 3 (noting that in 1966 jury studies, of trials that were a week long, "verdicts were usually reached within 3.7 hours. In cases where no verdict could be reached, 15% resulted in hung juries within 4 hours.").

Here, the trial was short and the key issue—the identification of defendant Campbell—was not complex. Three hours of deliberation was not insufficient, and the more important factor is that the jury declared itself deadlocked.

### D. *Communications Between Judge and Jury*

■ As noted above, "[i]t is significant that the jury on its own initiative declared

**13.** *See also, e.g., United States v. Beckerman,* 516 F.2d at 909–10 (mistrial proper where jurors declared themselves deadlocked after a short trial where the issues were not complicated); *United States v. Lansdown,* 460 F.2d at 169 & n. 2 ("While the length of deliberations is a relevant factor, the more important consideration is whether there is a possibility that the jury can reach a verdict within a reasonable time. The most reliable source as to this information is the jury itself." Court cites case where mistrial declared after one hour and 35 minutes of deliberations and another where mistrial declared after 40 hours, and concludes that "[t]his range suggests the impossibility of establishing a rule based solely on the length of deliberations.").

that it was hopelessly deadlocked." *Matter of Plummer v. Rothwax*, 63 N.Y.2d at 252, 481 N.Y.S.2d at 663, 471 N.E.2d at 435.

The trial judge, however, then read to the jury an excerpt from *Matter of Plummer v. Rothwax*. The Court strongly disapproves of the trial judge's reading of that decision to the jury. As Campbell notes, the reading was not helpful to the jurors and the jurors could have misconstrued it as suggesting that they declare themselves hopelessly deadlocked. (*See* Petitioner's State Court Brief, App. at 212–13.) However, I cannot say that, under the circumstances of this case, this reading was constitutional error. The jury had already declared itself deadlocked. The jury's note indicated that on two of the last three ballots, the same split of for and against had been maintained. In light of the deference shown to trial judge's in deciding to declare a mistrial for juror deadlock, the Court disapproves of the reading of the excerpt from *Matter of Plummer v. Rothwax* but does not find it to be constitutional error. *See United States v. Klein*, 582 F.2d at 193–94 (where jury indicated it was deadlocked, subsequent inquiry by trial judge that reminded the jury that they had previously reported that they were deadlocked and asked if they were still deadlocked or could possibly reach a verdict, held not improperly suggestive).

## CONCLUSION

For the reasons set forth above, I recommend that Campbell's petition for a writ of habeas corpus should be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Peter K. Leisure, 500 Pearl Street, Room 1910, and to the chambers of the undersigned, 40 Centre Street, Room 540. Any requests for an extension of time for filing objections must be directed to Judge Leisure. Failure to file objections may result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.), *cert. denied*, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir.1983).

Dated: December 4, 1995