**UNITED STATES of America, Appellee,**

**v.**

**Henry CORDING, Defendant-Appellant.**

**No. 324, Docket 26773.**

United States Court of Appeals Second Circuit.

Argued April 10, 1961.

Decided May 18, 1961.

James J. Hanrahan, New York City, for defendant-appellant.

Averill M. Williams, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Elliott Kahaner, U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Before CLARK, MEDINA, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

■ Defendant Henry Cording appeals from a judgment of conviction on three counts of an indictment for the illegal sale of heroin, 21 U.S.C. § 174, 26 U.S.C. §§ 4704(a), 4705(a). An earlier trial on these counts before Judge Abruzzo resulted in a hung jury; and, for his first point, defendant contends that a second trial was therefore barred on the ground of former jeopardy. On the first trial the jury commenced deliberations at 3:50 p. m., recessed for dinner at 6:30 p. m., and resumed deliberations at 8:30 p.m. At 9:40 p. m., the foreman reported that the jury had not been able to agree and that there was no likelihood of their agreeing if they were kept out longer. Judge Abruzzo thereupon declared a mistrial. Since the jury had declared its inability to agree on a verdict, the action of the court in discharging the jury was a proper exercise of its discretion. In these circumstances it is well established that a second trial may be had without running afoul of the prohibition against double jeopardy. Keerl v. State of Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734; Dreyer v. People of State of Illinois, 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79; Logan v. United States, 144 U.S. 263, 297–298, 12 S.Ct. 617, 36 L.Ed. 429; United States v. Perez, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165.

At the second trial the testimony of federal agents as to purchasing the drugs from defendant was ample to offset his defense of alibi, and hence he is forced to rely on alleged errors in the trial. Thus he assigns error in the quashing of a subpoena served upon the Federal Bureau of Narcotics, seeking books and records regarding defendant's visits to the Bureau. During the trial Agent Dolce testified that defendant had been interviewed three times at the Bureau and had made various incriminating statements in connection with a Bureau request for co-operation in tracking down other violators. Defendant admitted to only one such meeting and denied making the statements described by Dolce. After the conclusion of the government's case defendant served the subpoena just described, for the purpose of showing that only one meeting occurred and that Dolce's testimony was false. The court granted a government motion to quash the subpoena on the ground that officers of the Bureau of Narcotics were prohibited by regulation from producing such records in any proceeding.

■■ Of course the government cannot utilize its claim of privilege to deny a defendant in a criminal prosecution access to information relevant and helpful to his defense. United States v. Andolschek, 2 Cir., 142 F.2d 503, 506; Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103; Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. But where the government concedes at trial the very facts that the defense seeks to establish by production of the records, the defendant is hardly prejudiced by their nonproduction. In the present case the sole purpose of the subpoena was to establish that Dolce's account of the meeting was unsubstantiated by any of the records of the Bureau. At trial Dolce admitted that, aside from the photographing and fingerprinting of the defendant, no record was made of defendant's coming to the Bureau, or of what transpired at the alleged meetings. Defendant thus obtained an admission by the government that it lacked any record of the described meetings or conversations, and had no need of access to Bureau records to establish this fact. Furthermore, defendant accepted Dolce's statement that, apart from fingerprinting and photographing, the Bureau generally did not keep a record of visits of persons such as the defendant. Thus

defendant made no claim that the absence of records of his visits had any particular significance. In these circumstances the quashing of the subpoena was not harmful and was not reversible error.

■ Defendant also complains of the exclusion of the testimony sought to be elicited from defense witness Nicholas Romano. Defendant had testified that he had worked during the day and evening of the crime at his job as a trailer driver for a trucking company; and this testimony was corroborated by his wife, who testified that she would have known if he had not worked a full week by looking in his pay envelope. On cross-examination, defendant stated that he punched the time clock when he went to work the day of the crime, took his truck out to work at the piers, and punched the time clock when he left work. Defendant further testified that he always punched his clock the first thing on getting to work, and that he never forgot to punch in. He added that he would always punch out before he went home, too. At this point the prosecution called the payroll clerk and assistant bookkeeper of defendant's employer, who identified defendant's timecard for the week of the crime and testified that the card showed that defendant did not work on the day of the crime.

Defendant then sought to overcome the effect of this damaging testimony by calling a fellow employee, one Nicholas Romano. Objections were sustained to such questions as whether the employees were ever paid on some other basis than timecards, whether "there ever comes a time when you do not punch a timecard," and how he would be paid for work as extra help in the garage at the terminal. Defendant made no attempt to explain to the court the relevancy of this testimony. Even on this appeal, defendant leaves us ignorant of the content of Romano's proposed testimony. Whether some employees did not punch timecards or whether work in the garage was paid under a different system, as by petty cash, has little bearing on whether defendant lied when he stated that he drove a truck on the day of the crime, that he punched a timecard that day, and that he never forgot to punch a timecard. Indeed, Romano's testimony would be relevant only on the theory that defendant, though he actually worked that day, was mistaken in thinking he punched the clock and drove a truck that day.

Where the relevancy of a question is clear on its face, the proponent has no burden of making a further or formal offer of proof. See Frisone v. United States, 9 Cir., 270 F.2d 401, 403. In this case, however, the excluded testimony would be relevant only on a rather far-fetched theory which defendant did not present to the trial court, and which he does not now argue on appeal. Furthermore, under this theory, Romano's testimony would be conditionally relevant at best—relevant only on the condition that defendant testify that he worked in the garage and failed to punch a timecard on the day of the crime. In these circumstances the trial court may insist that the defendant give assurance that such connecting testimony be supplied. 6 Wigmore, Evidence § 1871 (3d Ed. 1940). Since no such connecting testimony was offered, Romano's testimony remained irrelevant, as corroboration for an alibi which defendant was not attempting to establish and which would have been inconsistent with the alibi which defendant had tendered in his previous testimony. Accordingly, Romano's testimony was properly excluded.

We find no error in the charge to the jury, or in the statements made by the prosecutor in the course of his summation.

Judgment affirmed.