STATE of Iowa, Appellee,

v.

Gary Dale NELSON, Appellant.

No. 57311.

Supreme Court of Iowa.

Oct. 15, 1975.

Carlin & Darbyshire, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., and Edward N. Wehr, County Atty., for appellee.

Heard by MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

Defendant was convicted on a charge of receiving *or* aiding in concealing stolen property, § 712.1, The Code. He was sentenced as an habitual criminal to imprisonment for a term not exceeding 25 years pursuant to § 747.5, The Code. A prior trial involving the same facts on a charge of receiving *and* aiding in concealing stolen property resulted in a mistrial following trial judge's determination the jury was deadlocked. We reverse and remand for new trial.

No issue is raised concerning the sufficiency of evidence. The jury could have found that defendant, at his Davenport, Iowa home, received a truck load of meat stolen from an Iowa City locker plant and, knowing it was stolen, helped dispose of it. Only the few facts bearing on alleged errors are significant, and will be noted in the divisions which follow.

For reversal defendant relies on five alleged trial court errors: 1) overruling defendant's mistrial motion based on prosecutorial misconduct in jury argument, 2) overruling his motion and objections to testimony that defense counsel appeared at defendant's home when the search was in progress, 3) failing to sustain his motion to suppress evidence, based on an allegedly defective search warrant, 4) failing to sustain his motion to strike the amended information on the ground he was placed in double jeopardy, and 5) overruling his objections to a prior felony conviction record which failed to disclose whether he was represented by counsel.

I. *Prosecutorial misconduct.*

Defendant's neighbor testified she had seen a truck (also stolen at Iowa City) back into defendant's drive at 5:45 A.M. on July 29, 1973. Two men were in it. Defendant raised his garage door and came out. All three unloaded the truck's contents into the garage.

Defendant did not take the stand. All arguments were reported and are before us.

The prosecutor argued,

"He [defense counsel] said the meat truck wasn't loaded and there wasn't any evidence of this. Well, by golly, folks, there was 4,045 pounds of meat taken and the only people that would know . * * * how much meat was on that truck were the three guys that unloaded it, and we don't have the two, the driver and the passenger, at our disposal, so we just can't introduce evidence on that. * * * He says there is no direct evidence that Mr. Nelson knew the meat was stolen, and that would be like, 'Yes, I told him.' Well, that's true, too, because the only two guys that, again, could testify to that, we don't know who they are and never have found out, and we don't have their testimony and they would be the ones that would say, 'Yes, I told him we stole it in Iowa City.' And, of course, the two sets of ears—or the one set of ears that would hear that—we don't know.

MR. CARLIN: Your Honor, I think that's an improper comment and I would object to it and ask that the jury be admonished to disregard it.

THE COURT: You may proceed.

MR. BERGER: Now, he challenged me. He did say, 'what other evidence?' I'll tell you what other evidence: We have evidence—uncontroverted evidence in this record, uncontroverted by any testimony of the defendant, and they certainly had every opportunity to call witnesses * * * that the neighbor had seen the passenger in that truck before at the Nelson residence and was introduced to him.

\*        \*        \*

I don't know about this phone call. We have no evidence of what the phone call was in the morning; the phone calls between the two—or one of the men and the defendant. We have no evidence of that. Had some evidence of a friend of his that works over in a bar in Rock Island, which there's nothing wrong with that, but he's a friend for 15 years. We have got his testimony and we have got Mrs. Nelson's testimony. We don't have any testimony, though, of what that actual phone call was—

MR. CARLIN: Your Honor, I'm going to object again to this type of argument. Wholly improper.

THE COURT: Objection is overruled."

Following arguments defense counsel promptly moved for mistrial because the State's argument "was predicated upon or drew inferences from the accused's failure to testify in his own behalf," citing instances and the holding in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The motion was overruled.

■ Where closing arguments are reported, certified and made a part of the record, objections to remarks of counsel during final jury argument are timely if urged at close of argument and in a motion for mistrial made before submission to the jury. *State v. White,* 225 N.W.2d 104, 105 (Iowa 1975); *Andrews v. Struble,* 178 N.W.2d 391, 401–402 (Iowa 1970).

In *Griffin,* supra, the United States Supreme Court held prosecution comment concerning the accused's silence, or court instructions that such silence is evidence of guilt, are forbidden. Following *Griffin* in *State v. Johnson,* 257 Iowa 1052, 1055, 135 N.W.2d 518, 520–521 (1965), we held comment by counsel or court in a criminal trial concerning the accused's failure to testify violates the self-incrimination clause of Amendment 5, United States Constitution, made applicable to the states by Amendment 14.

In *State v. Osborne,* 258 Iowa 390, 393, 139 N.W.2d 177, 179 (1965) we interpreted *Griffin* and *Johnson,* supra, to mean the silence of an accused may not be used directly or indirectly to aid the prosecution. And in *State v. Kimball,* 176 N.W.2d 864, 869 (Iowa 1970) we displayed a marked sensitivity to this right of an accused, holding it would be reversible error, in absence of a defense request, even to give an instruction that no inference might be drawn from defendant's failure to testify. We reasoned such an instruction might inadvertently cause jurors to consider adverse inferences which would not otherwise occur to them.

■ We can only interpret the remarks of the prosecution as an indirect effort to focus the jury's attention on defendant's failure to testify. An overt statement is not required. See *United States v. Flannery,* 451 F.2d 880, 882 (1st Cir. 1971) (statement that testimony as to private conversations between defendant and another was "uncontradicted"); *Tanner v. United States,* 401 F.2d 281, 289 (8th Cir. 1968), cert. denied, 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806 (1969) (statements that "[t]his evidence has not been disputed," where the only person who could contradict it was defendant); *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973) (repeated references, over objection, to evidence against defendant being "uncontroverted," where defendant did not testify or offer other defense). See Annotations, 24 A.L.R.3d 1093 (1969), 18 A.L.R.3d 1335 (1968).

On appeal the State hardly argues prosecutor's statements did not draw the jurors' attention to defendant's failure to take the stand. It asserts these statements were proper response to defense argument, citing *State v. White,* supra; *State v. O'Kelly,* 211 N.W.2d 589 (Iowa 1973), cert. denied, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *State v. Horsey,* 180 N.W.2d 459 (Iowa 1970); and *State v. Sage,* 162 N.W.2d 502 (Iowa 1968).

We have examined defendant's reported and transcribed argument. We cannot find

defense statements which would logically invite the State's comments above set out.

■ Any argument the State's evidence is uncontroverted may be subject to some misinterpretation. A plea of not guilty controverts and puts in issue every material allegation of the indictment. *State v. Hephner,* 161 N.W.2d 714, 720 (Iowa 1968); *State v. Baker,* 246 Iowa 215, 227, 66 N.W.2d 303, 310 (1954); see *DeCecco v. United States,* 338 F.2d 797 (1st Cir. 1964). Although the point is not raised here, arguments and counter-arguments relating to lack of evidence or failure to produce witnesses, together with the cases the State relies on, must ultimately be re-examined in light of our recent decisions holding trial court's reasonable doubt instruction must limit the jury's consideration of lack of evidence to lack or failure on the part of the State, not the defendant. *State v. Hansen,* 225 N.W.2d 343, 346 (Iowa 1975); *State v. Boyken,* 217 N.W.2d 218, 219 (Iowa 1974).

■ Finally, the State argues misconduct of counsel is ground for reversal only if it deprives defendant of a fair trial, citing *State v. Horsey,* supra. But where, as here, there is a violation of defendant's fundamental rights under the United States Constitution, we can hold error harmless only when we can declare a belief it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Sloan,* 203 N.W.2d 225, 227 (Iowa 1972); see *State v. Peterson,* 189 N.W.2d 891, 896–897 (Iowa 1971).

■ We can make no such declaration on this record. The issues were so close one jury failed to reach a decision. We hold reversible error was committed.

II. *Presence of counsel at execution of search warrant.*

The record indicates while a warrant search of defendant's home was in progress two attorneys arrived, one being counsel who represented defendant at trial.

Defendant made a "motion in limine" which was actually a motion to suppress evidence of the attorneys' presence and all questions relating thereto, on grounds it would serve no relevant, material or legitimate purpose and would "cast aspersions upon the request for counsel at that time."

Resisting, the prosecutor argued, *inter alia,* "the arrival of two attorneys on the scene while the search warrant was in progress is indicative of some awareness on the part of the defendant that what he had in his possession was stolen property." Defense counsel responded it should not be the law of Iowa that the exercise of right to counsel is evidence of guilt, intent, or wrongful state of mind.

Trial court granted the motion only in forbidding mention of the other attorney's name.

Subsequently a captain in the sheriff's office was permitted to testify, over the objection it was incompetent, irrelevant and immaterial, that defendant's attorney and another lawyer appeared while the search party was present at the Nelson residence.

In argument here the State abandons the rationale this evidence of recourse to counsel was evidence of guilt. It alleges trial court properly exercised its broad discretion in permitting the testimony as a part of the "res gestae of the case" and to show the facts and circumstances surrounding the execution of the search warrant. As a second argument the State asserts admission of the evidence was harmless error.

■ The record does not reflect the attorneys said anything or that their conduct, apart from the fact of their presence, was in any way noteworthy. If, as the State now intimates, testimony concerning their presence was not offered to raise an inference of defendant's guilt, its relevancy to any issue in the case is indiscernible.

■ We need not conclude whether defendant's universally recognized privilege to have a lawyer in attendance during a

procedure which might ultimately affect his life and liberty did in this instance rise to a constitutionally protected right to counsel. See *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In either event, the court should not penalize him by allowing the State to show the presence of the lawyers when such evidence could have no purpose other than to raise an inference of guilt in the jurors' minds. As a matter of public policy, neither trial court rulings nor our decisions should unnecessarily discourage lay persons from seeking advice and assistance of counsel in important and serious legal procedures. This position finds support in *United States v. Liddy,* 509 F.2d 428, 442–445 (D.C.Cir. 1974); *United States ex rel. Macon v. Yeager,* 476 F.2d 613 (3rd Cir.), cert. denied, 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973); *Fagundes v. United States,* 340 F.2d 673 (1st Cir. 1965); *People v. Hansard,* 245 Cal.App.2d 691, 53 Cal.Rptr. 918 (1966); *People v. Gursey,* 22 N.Y.S.2d 224, 227–228, 292 N.Y.S.2d 416, 418, 239 N.E.2d 351, 352–353 (1968), and *People v. Ianniello,* 21 N.Y.2d 418, 423–425, 288 N.Y.S.2d 462, 467–469, 235 N.E.2d 439, 442–443, cert. denied, 393 U.S. 827, 89 S.Ct. 90, 21 L.Ed.2d 98 (1968).

■ State's theory the phrase "res gestae" talismanically opens the door to extraneous and prejudicial evidence has been thoroughly and adversely laid to rest in *State v. Oppedal,* 232 N.W.2d 517 (Iowa 1975.)

■ Neither are we convinced admission of the above evidence was harmless error.

The errors discussed in this division and division I compel reversal. As the case must be remanded for new trial we briefly discuss defendant's other assertions of error.

III. *Validity of search warrant.*

Defendant contends trial court should have sustained his pretrial motion to suppress evidence (a large quantity of meat later identified as stolen from the locker) because the search warrant was defective. See chapter 751, The Code. We have set out the underlying principles by which a search warrant must be tested in *State v. Valde,* 225 N.W.2d 313, 315–316 (Iowa 1975); *State v. Drake,* 224 N.W.2d 476, 478 (Iowa 1974), and *State v. Spier,* 173 N.W.2d 854, 857–860 (Iowa 1970).

■ The question is not, as argued by defendant, whether the recitation in the magistrate's endorsement on the application was enough, per se, to justify issuance of the warrant. Section 751.4, The Code. After briefs were filed in this appeal we held absence of substantial compliance with the endorsement requirements of § 751.4 does not automatically invalidate a search warrant. We also confirmed that sufficiency of probable cause may be reviewed either on oral testimony when the substance of such testimony is endorsed on the application by the magistrate, or by the contents of affidavits submitted to him with the application. *State v. Liesche,* 228 N.W.2d 44, 47–49 (Iowa 1975); see *State v. Boyd,* 224 N.W.2d 609, 616 (Iowa 1974).

■ Here the magistrate's endorsement only minimally passed muster, if at all. But deputy sheriff Hackett's affidavit which was a part of the application contained detailed information, including the separate observations of two eye-witness informants. One informant was apparently the neighbor who first saw the stolen truck backed into defendant's drive and the stolen meat unloaded. The other was a person who on the same date saw defendant carrying meat from the freezer in his garage to cars arriving at his residence. From the nature of facts supplied by these informants and the officer, the magistrate could have concluded they were citizen informers, not police tipsters acting for money, leniency or other selfish purpose. Their reliability was thus subject to a lesser scrutiny. See *State v. Drake, supra* at 478.

In our view the magistrate had in the affidavit sufficient facts and circumstances

upon which he could have found probable cause to issue the warrant.

Trial court rightly overruled defendant's motion to suppress the evidence seized under the search warrant.

### IV. *Double jeopardy.*

Defendant was first charged with receiving *and* aiding in concealing stolen property. The case was submitted to the jury at 11:50 A.M., November 28, 1973. Apparently that evening the judge received an indication the jury was deadlocked.

Trial court told counsel and defendant he intended to call the jury into the courtroom to confirm whether or not this was true, and if so, to inquire of the foreman whether he believed a verdict could be reached upon continued deliberation. If the answer were negative, the judge indicated he would discharge the jury and reassign the case for trial. Defendant, responding to his counsel's inquiry, said his thoughts were to "Let them decide it." Neither counsel objected to trial court's proposed procedure. Both said they would object to trial court giving "the crash instruction or the Allen instruction."

At 8:49 P.M. the jury returned to the courtroom. The jury foreman, in response to questions from the court, confirmed the deadlock and expressed his opinion a verdict could not be reached if the deliberations were continued. Trial court discharged the jury and stated the case would be reassigned for trial.

Thereafter the State made application to amend the county attorney's information to charge defendant with receiving *or* aiding in concealing stolen property. Defendant resisted on the ground, *inter alia,* he was entitled to be retried on the same issues. The amendment was allowed. See *State v. Hochmuth,* 256 Iowa 442, 445, 127 N.W.2d 658, 659 (1964), holding § 712.1 defines one crime which may be committed in three ways.

Defendant then filed a written plea of not guilty and not guilty by reason of dou-

ble jeopardy. He moved to strike the amended information on double jeopardy grounds. Defendant claims trial court was wrong in overruling this motion. Amendment 5, United States Constitution; Article I, § 12, Iowa Constitution.

The principles which control our disposition of this issue were identified in *State v. White,* 209 N.W.2d 15 (Iowa 1973). The statutory provisions which vest discretion in trial court to discharge the jury at the expiration of such period as it may deem proper when it "satisfactorily appears * * * there is no reasonable probability * * * it can agree" (§ 784.3), and which permit defendant to be again tried at a later trial assignment (§ 784.4), are of course limited by the above federal and state constitutional protections against double jeopardy.

Since *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824) it has been the rule defendant may be retried when in the sound discretion of trial court discharging the first jury "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." 22 U.S. at 580, 6 L.Ed. at 165.

But it has never been held the doctrine of manifest necessity implies an absolute need. *Whitfield v. Warden of Maryland House of Correction,* 486 F.2d 1118, 1121 (4th Cir. 1973), cert. denied, 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 116 (1974). Much less have appellate courts rigidly circumscribed trial court's broad discretion in applying the *Perez* rationale. See *Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425, 429 (1973) ("[t]he broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decisions of this Court"); *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 904 (1961) ("we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion"); *State v. Vaughan,* 29 Iowa 286, 288 (1870) ("we are very cordially agreed in

holding to the * * * view, that it is a matter of sound discretion").

This case was submitted to the jurors nine hours before they were discharged, even though excluding meal times, they had deliberated only five and one-half hours. The jurors had spent a long day, and it was time to sequester them for the night or send them home until morning. The latter course of separating jurors always involves some danger. Without objection from any of the jurors, the foreman indicated to trial judge they were hopelessly deadlocked. Both the State and defense objected to further jury instructions.

"Requiring a jury to continue deliberations despite genuine and irreconcilable disagreement more often than not defeats the ends of public justice; not only will such compulsion needlessly waste valuable judicial resources, it may coerce erroneous verdicts."—*United States v. Goldstein*, 479 F.2d 1061, 1068 (2d Cir.), cert. denied, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973).

■ It would have been preferable for trial court, cautioning against comment beyond a yes or no response, to inquire of each juror individually as to their inability to agree. See *Koehler v. State*, 519 P.2d 442 (Alaska 1974); *Paulson v. Superior Court of El Dorado County*, 58 Cal.2d 1, 22 Cal.Rptr. 649, 372 P.2d 641 (1962). We also think trial judge might have more prudently brought the jury back the next day for further deliberation. But we cannot say on this record he abused his broad discretion. We therefore hold defendant's second trial did not violate his constitutional right not to be twice placed in jeopardy. Our conclusion finds support in *United States v. See*, 505 F.2d 845 (9th Cir. 1974), cert. denied, *Gordon v. United States*, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975); and *United States v. Cording*, 290 F.2d 392 (2d Cir. 1961).

V. *Sentencing.*

■ The amended county attorney's information charged defendant with being an habitual criminal. See § 747.5, The Code. Defendant contends trial court, in the recidivist proceeding, erroneously received into evidence a certified copy of a judgment and mittimus relating to a Colorado felony conviction which did not disclose defendant when convicted was represented by counsel.

Defendant's brief concedes a reversal on this alleged error would require us to overrule *State v. Cameron*, 167 N.W.2d 689 (Iowa 1969). Our holding in *Cameron* (that the burden shifts to the State to prove the accused was represented only after the accused first introduces evidence to show that he was not in fact so represented) has found subsequent support in *State v. Miller*, 108 Ariz. 303, 309, 497 P.2d 516, 522 (1972):

"Although defendant may at times benefit from a silent record, we do not believe it unreasonable, illogical or even contrary to recent United States Supreme Court cases * * * to require some allegation of infirmity by the defendant when he is attempting to go behind the face of a judgment of a sister state and is requesting us to ignore the judgment despite the 'full faith and credit' clause of the United States Constitution."

We are not disposed to overrule *Cameron*. Trial court committed no error in overruling defendant's objection to the exhibit from Colorado.

However, for the reasons set out in divisions I and II, we reverse and remand for new trial.

Reversed and remanded.