**IN THE COURT OF APPEALS OF IOWA**

No. 24-0577
Filed June 18, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**WALTER HENERY STACHAR III,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Winnebago County,
Blake H. Norman, Judge.


        A defendant appeals his conviction for second-degree sexual abuse and
the district court's denial of his motion for a new trial.  **AFFIRMED**.


        Karmen Anderson, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney
General, for appellee.


        Considered without oral argument by Greer, P.J., Chicchelly, J., and
Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2025).

**GREER, Presiding Judge.**

Walter Stachar was convicted of sexual abuse in the second degree after a three-day trial by jury. He appeals, arguing there was insufficient evidence to support his conviction for sexually abusing his niece, B.U.,[1] and that the district court abused its discretion in denying his motion for a new trial. Nestled under his first argument is a contention the prosecutor made improper statements,[2] including vouching for B.U. during closing arguments, but we find this challenge was not preserved for our review. After review of the record, we affirm Stachar's conviction and the denial of his motion for new trial.

**I. Background Facts and Proceedings.**

In summer 2023, Stachar hit a financial rough patch, and his sister and her husband—the mother and stepfather of B.U.—allowed him to stay on their couch occasionally. Around August 14, 2023, B.U. confided in her two friends, including eleven-year-old S., who testified at trial, that Stachar "had sex with her." The two friends told B.U.'s mother, but after that incident, S. did not see B.U. again.

On August 17, law enforcement authorities received a report from the Iowa Department of Health and Human Services that B.U. had been sexually assaulted by Stachar. The following week, B.U. was taken to Waterloo, Iowa, for a forensic

---

[1] B.U. was nine years old at the time of trial in January and February 2024.

[2] Stachar characterizes this as a *Graves* challenge. *See State v. Graves*, 668 N.W.2d 860, 883 (Iowa 2003) (finding that the defendant was prejudiced by misconduct that included "the prosecutor's disparagement of defense counsel's argument," "his improper characterization of the defendant's testimony" concerning a witness's veracity, "his improper enhancement of the officer's credibility," "his improper personal vouching against the credibility of [defendant's] testimony," and "the prosecutor's statement to the jury that it had to find the defendant guilty if it believed the police officer's testimony").

interview. B.U.'s mother expressed hesitancy when the authorities tried to schedule the interview. During the interview, B.U. described several sexual acts that she was forced to perform on Stachar, including anal penetration with a fork and spoon. B.U. also reported Stachar had touched her "front" under her underwear and "wiggled" his hand. In addition, she reported that her stepfather also sexually abused her. Shortly after the interview, B.U. was removed from the home and placed with her grandmother.

Authorities followed up with Stachar. He vehemently denied B.U.'s allegations but admitted to dislodging feces from the child's rectum using his fingers.

During trial, B.U. denied her previous report that she anally penetrated Stachar with utensils or was forced to perform other sex acts. But she was firm that Stachar's touching of her front "really happened." Stachar testified and denied any inappropriate behavior. However, as he previously told police officers, he admitted using his hand to remove some feces from B.U.'s anus when she asked him to help with her constipation issue. After a three-day trial, the jury returned a verdict of guilty.

Stachar moved for a new trial and in arrest of judgment. In part, he argued the verdict was contrary to the weight of the evidence and the evidence was insufficient to support the verdict. The district court denied the motion before the

sentencing hearing, at which Stachar was sentenced to a term of imprisonment not to exceed twenty-five years, with a mandatory minimum of seventy percent.[3]

Stachar appeals.

## II. Discussion.

Stachar makes three arguments on appeal: (1) there was insufficient evidence to support his conviction, (2) the prosecutor committed a *Graves* violation during closing arguments, and (3) the district court abused its discretion in denying his motion for a new trial. We evaluate each argument in turn.

## A. Sufficiency of the Evidence.

When determining whether substantial evidence supports the verdict, we review for correction of errors at law. *State v. Buman*, 955 N.W.2d 215, 219 (Iowa 2021). "In conducting that review, we are highly deferential to the jury's verdict. The jury's verdict binds this court if the verdict is supported by substantial evidence." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). "Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Sutton*, 636 N.W.2d 107, 110 (Iowa 2001). "[W]e view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Crawford*, 972 N.W.2d at 202 (citation omitted).

---

[3] After discussion, Stachar abandoned the substantial-evidence challenge raised in his motion for new trial, agreeing with the district court that it was not an available ground under the rule. *See* Iowa R. Crim. P. 2.24(2)(b).

Stachar asserts there is insufficient evidence for the verdict by attacking the child's credibility, contending, "[T]he court must believe the testimony of B.U. and disbelieve Stachar in order to find him guilty of this offense. The entire case revolved around testimony, and the jury's determination on credibility." Stachar is correct; the trial came down to whether the jury found Stachar or B.U. more credible. But in determining whether there is substantial evidence to support Stachar's conviction, we do not step on the jury's toes by making a credibility determination. *See State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) ("It is not our place [when ruling on a sufficiency challenge] 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.'" (citation omitted)). Instead, "we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence". *See id.* (cleaned up).

The jury convicted Stachar of second-degree sexual abuse under Iowa Code sections 709.1 and 709.3(1)(b) (2023),[4] which, in this matter, requires a finding that sexual abuse was perpetrated on a child. On our review, viewing the evidence in the light most favorable to the State, we find substantial evidence that Stachar sexually abused B.U.

During her testimony, B.U. was asked about her assertions against Stachar. When asked if "anyone ever touched one of [her] private parts," B.U. answered,

---

[4] Stachar was charged with committing the sex act "on or between July 1, 2022, through August 14, 2023." As the relevant code sections did not change during this window, we refer to the 2023 Iowa Code.

"Yes. . . . Walter [Stachar]." When asked if he touched her "one time or more than one time," she replied, "More than one time." She recounted one episode where Stachar reached under her clothes and touched her "front," skin to skin, when she was sitting on her couch. On re-direct examination, the prosecutor asked, "When you told us about Walter touching your front part . . . the last time that you remember, was that your imagination or did that really happen?" B.U. responded, "It really happened."

In addition to B.U.'s testimony, the jury heard evidence regarding her statements to her neighborhood friend, S., who testified at the trial. According to S., the children were petting kittens at a neighbor's house when B.U. told S. and the other friend that "her uncle had sex with her." S. and another child told B.U.'s mother, who became upset with B.U., yelling that she did not believe her. Later that night the two friends and B.U. left the home scared; they were crying and hugging outside of the home. B.U. was removed from the home shortly thereafter and lost touch with her former neighbor.

Stachar argues B.U.'s statements in her initial interview and testimony were inconsistent and, as a result, do not constitute substantial evidence. Although B.U. did make inconsistent statements,[5] including whether she was forced to perform sex acts on Stachar, her testimony that Stachar touched her "front" has not changed. B.U.'s testimony is sufficient to ground a finding of substantial evidence.

---

[5] Embedded in Stachar's argument is a contention that drawing paper, dolls, and other objects in the interview room were distracting and stoked B.U.'s imagination, leading to a false report. Because Stachar did not raise this argument at trial, nor in his post-trial motion, we find error is not preserved with respect to this argument. As a result, we do not address the merits. *See State v. Chawech*, 15 N.W.3d 78, 83 (Iowa 2024)

*See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) ("We find that the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt."). And if we find substantial evidence on the record, we are bound by the jury's verdict. *See Crawford*, 972 N.W.2d at 202.

**B. Alleged *Graves* Violation.**

Nestled under his sufficiency argument,[6] Stachar argues that comments made by the State during closing argument constitute a *Graves* violation. *See Graves*, 668 N.W.2d at 870–74 (establishing a framework for assessing claims of prosecutorial misconduct). Before we address the substance of this argument, we determine if Stachar preserved error. "Because we are error-correction courts, we generally don't decide issues for the first time. Rather, we usually decide only those issues that were (1) properly raised in the district court and (2) ruled on by the district court." *Chawech*, 15 N.W.3d at 83. Stachar did not object to any statements from the State, nor did he move for mistrial following the closing arguments. Therefore, we conclude any claim of prosecutorial misconduct during closing statements is not preserved. *See State v. Krogmann*, 804 N.W.2d 518, 526 (Iowa 2011) ("[Defendant] cannot obtain a new trial based on prosecutorial misconduct when he failed to move for a mistrial at the time."); *State v. Romeo*,

---

[6] We also note that Stachar raised this distinct issue as a part of his sufficiency of the evidence challenge, which violates our appellate rules. *See* Iowa Rs. App. P. 6.903(2)(a)(3) (requiring appellant's brief to contain a statement of the issues presented for review, with "[e]ach issue . . . numbered and stated separately in the same order as presented in the argument"), 6.903(2)(a)(8)(1)–(2) (requiring appellant's brief to include an argument section "structured so that each issue raised on appeal is addressed in a separately numbered division" with each division including a statement addressing error preservation and a statement indicating the scope and standard of review).

542 N.W.2d 543, 552 n.5 (Iowa 1996) ("[O]bjections to remarks of counsel during final [jury] argument are timely if urged at close of argument and in a motion for mistrial made before submission to the jury." (quoting *State v. Nelson*, 234 N.W.2d 368, 371 (Iowa 1975)); *State v. Radeke*, 444 N.W.2d 476, 479 (Iowa 1989) (finding error was not preserved because a "request [for] a mistrial for alleged misconduct by opposing counsel must be asserted before the issues are submitted to the jury").

We do not consider this unpreserved claim.

**C. Denial of Motion for New Trial.**

"Iowa [rules]. . . permit[] a district court to grant a motion for new trial when a verdict is contrary to the weight of the evidence.  A verdict is contrary to the weight of the evidence only when 'a greater amount of credible evidence supports one side of an issue or cause than the other.'"  *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016) (internal citation omitted) (discussing what is now Iowa Rule of Criminal Procedure 2.24(2)(b)(7)).  We review for an abuse of discretion.  *Id.*  "Our review is not to determine whether the verdict is contrary to the weight of the evidence but only to determine whether the district court abused its considerable discretion in denying the motion."  *State v. Stendrup,* 983 N.W.2d 231, 246 (Iowa 2022).

Stachar argues that B.U. is not a credible witness, citing to her propensity for play and imagination, similar assertions she made against her stepfather, and inconsistent statements between her forensic interview and trial testimony.  But to warrant a new trial, Stachar had to convince the district court that "a greater amount

of credible evidence" supports his recounting of events rather than B.U.'s. In ruling on Stachar's motion for new trial, the court made credibility findings, stating:

> I specifically was the judge for your trial, sir. I do recall the evidence. I was able to observe the witnesses, both for the State and for the defendant.
>
> Sir, reviewing all of the record, the evidence presented to the jury, I do not find that there has been a showing that the verdict was contrary to the weight of the evidence. They had an opportunity to view the credibility—the jurors specifically. The Court has also done so. Based on the testimony, I do believe that they could find that the victim of this offense was credible, that the evidence supported her version of events, and I do not believe this is one of the extraordinary cases that preponderates heavily against the verdict, and there has been no showing that any other sufficient evidence—excuse me— any other credible evidence supports the verdict alternative to that, so that motion is denied.

The district court applied the correct standard and made a fair determination from the evidence presented at trial. Thus, we affirm the district court's denial of Stachar's motion for a new trial.

## III. Conclusion.

We affirm Stachar's conviction and the district court's denial of the motion for a new trial.

**AFFIRMED.**